IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NITRA GIPSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-08-2307 |
| | § | |
| WAL-MART STORES, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

On June 12, 2008, Nitra Gipson sued Wal-Mart Stores, Inc., Sarah Costin, Bennett

Deloney & Noyes P.C., an unknown Wal-Mart manager, Michael Bennett, Richard Deloney,

and Ronald Noyes, Jr. in Texas state court.  Gipson asserted claims for false arrest, false

imprisonment, malicious prosecution, defamation, intentional infliction of emotional distress,

fraud, conversion, negligence, and violations of the Texas Deceptive Trade Practices Act

(DTPA) and Texas Debt Collection Act (TDCA).  Wal-Mart and Costin filed a notice of

removal on July 24, 2008.[1]  (Docket Entry No. 1).  The notice stated that removal was based

---

[1] The notice of removal filed by Wal-Mart and Costin states that "[a]ll Defendants consent to removal." (Docket Entry No. 1, at 3).  Under *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254 (5th Cir.1988), such a statement, without more, is insufficient to show all the defendants' "actual joinder in or consent to the original removal petition."  *Id.* at 1262 n.11 (noting that although the removal petition stated that a codefendant had consented to removal, the petition failed to state that the codefendant had authorized the removing defendant to represent to the court that the codefendant had consented, such that "there was no adequate allegation or showing of [the codefendant's] actual joinder in or consent to the original removal petition").  The notice of removal does not contain either a written statement from  the codefendants consenting to removal or a written statement that the codefendants authorized Wal-Mart and Costin to represent their consent to the court.

on diversity jurisdiction and that the Texas citizenship of Costin should be disregarded because she was fraudulently or improperly joined.  "[N]o reasonable possibility exists that Gipson can recover against Costin" because the "alleged acts and/or omissions attributed to Costin by Gipson do not include the commission of an intentional tort" and "were undertaken in the course and scope of [Costin's] employment for Wal-Mart."  (*Id.*, at 10).

Gipson moved to remand, arguing that Costin was properly joined as a defendant. (Docket Entry No. 9).  Gipson seeks attorney's fees and costs and sanctions against defense counsel for the removal.  (*Id.*).  The defendants responded, (Docket Entry No. 13), and Gipson replied, (Docket Entry No. 15).

Based on the pleadings; the motion, response, and reply; and the applicable law, this court denies Gipson's motion to remand and denies the motions for sanctions and fees.  The reasons are explained below.

## I.    Background

This case arises from Gipson's May 2008 arrest for trying to cash allegedly fraudulent Wal-Mart money orders at a Wal-Mart Store in Houston, Texas.  Gipson is a Texas citizen. Wal-Mart Stores Texas, L.L.C. is a Delaware corporation, with its principal place of business

---

A plaintiff may move to remand an action on the basis of any defect in removal procedure, other than subject matter jurisdiction, within thirty days of removal.  28 U.S.C. § 1447(c).  Gipson has not argued that this court should remand based on lack of all defendants' consent to removal.  Gipson has waived her right to seek remand on this procedural defect by not raising it within 30 days of removal.  *See Masterson v. Apotex, Corp.*, 2008 WL 2823944, at *2 (S.D. Fla. July 22, 2008) (holding that plaintiffs waived right to seek remand based on procedural defect of lack of unanimity because they did not do so until more than 30 days after removal).

in Arkansas.  Sarah Costin is a Texas citizen.  When the incident occurred, Costin worked as an asset protection associate at the Wal-Mart.  Bennett Deloney & Noyes P.C. is a Utah law firm that sent Gipson letters on behalf of Wal-Mart;  lawyers with that firm, Michael Bennett, Richard Deloney, and Ronald Noyes, Jr., are Utah citizens.  Costin is the only nondiverse defendant.

In the petition, Gipson alleges that in May 2008, she sold her car.  The buyer paid with five Wal-Mart money orders, payable to Gipson, totaling $4,000.  On May 20, 2008, Gipson went to Wal-Mart Store #2718 in Houston and presented the money orders for payment at the courtesy booth.  The  clerk took Gipson's identification and the money orders to an interior office for verification.  After approximately one hour, officers from the Houston Police Department (HPD) came to the courtesy booth and escorted Gipson to a room at the back of the store.  Gipson alleges that in that room, the police officers handcuffed her, questioned her, and searched her purse.  Several Wal-Mart employees, including Costin, came into the back room.  According to Gipson, Costin stated that the money orders Gipson had presented for payment were "fake" and "counterfeit."  Gipson asked Costin and other Wal-Mart employees to call the Wal-Mart bank to verify that the money orders were genuine. Costin told Gipson that they had done so and that the money orders were not issued by Wal-Mart.  Gipson asked if they had verified the serial numbers with MoneyGram.  Another Wal-Mart employee, the loss prevention manager, told Costin they had done so.

Gipson alleged that the HPD officers told her that they commonly encounter fake money orders and asked her to tell them what happened.  Gipson told the officers that she

had sold her car to pay her college tuition.  She told the officers that the buyer had given her

the money orders, saying that they were purchased in Louisiana.  In the petition, Gipson

alleges that one of the HPD officers said, "We don't care that you are going in College or

going to school because you are going to jail."  (Docket Entry No. 1, Ex. A).  Gipson's

request to make a phone call to clear things up was denied.

Gipson alleges that she told the Wal-Mart loss prevention manager that she worked

for a bank.  The loss prevention manager took Gipson's photograph and placed it in a Wal-

Mart book.  The HPD officers and the Wal-Mart loss prevention manager then escorted

Gipson through the store to the front exit.  The officers drove Gipson to jail, where she was

held on charges of forgery.  She was  denied bail and was not presented before a magistrate

judge.  Gipson was released on May 23, 2008.  Bennett Deloney & Noyes, P.C., a law firm

representing Wal-Mart, sent Gipson a letter on May 23, 2008 stating that she had committed

theft and demanding payment.  The criminal charge was later dismissed.

In the petition, Gipson contends that Wal-Mart and the HPD failed to conduct a proper

investigation.  As a result, she was falsely arrested and remained in jail.  Gipson asserts that

she had in her possession check receipts proving that the money orders were genuine, but

neither the officers nor the Wal-Mart employees requested the receipts.  In the petition,

Gipson asserts that "Costin signed a complaint charging [her] with a felony-forgery," which

was abandoned because it was without probable cause. (Docket Entry No. 1, Ex. A). Gipson

alleges she was "falsely arrested, falsely imprisoned, maliciously prosecuted and defamed

both slander per se and libel per se." (*Id.*).  The petition does not distinguish which

4

defendant committed which act.  Gipson alleges that Wal-Mart is liable for: (1) fraud because it lied about the negotiability of its money orders; (2) conversion because Gipson's funds were converted to Wal-Mart's use; (3) violations of the DTPA and TDCA for the letter sent by its attorneys, Bennett Deloney & Noyes, P.C., who are not licensed to practice law in Texas.  Gipson also asserts that "Defendants . . . intentionally inflicted emotional distress upon [her]."  (*Id.*).  She alleges an alternative cause of action for negligence and/or gross negligence against Wal-Mart and its employees for the investigation that led to her arrest.

Gipson alleges that as a result of the arrest and the time she spent in jail, she lost her job.  She seeks lost income and lost future opportunity.  She also seeks damages for mental anguish, humiliation, and loss of standing in the community.  Gipson seeks "disgorgement of all profit Wal-Mart has made from its banking operations that included retention of [her] money for the time period that Wal-Mart has stolen her money."  She also seeks actual and punitive damages for "Wal-Mart's intentional acts of depriving her of her property."  In addition, Gipson seeks a permanent injunction enjoining Wal-Mart "from engaging in selling money orders until it adopts honest business practices and complies with ethical business standards . . . from charging anyone who holds Wal-Mart money orders until Wal-Mart has verified in fact that the money orders have been reported stolen . . . [and] from engaging in any banking serves or business until it can be done safely."  She also seeks an injunction ordering Wal-Mart "to install state of the art technology that provides instant verification of the money orders it sells so other citizens will not be in jeopardy of arrest."  (*Id.*).  Gipson also seeks to enjoin Bennett Deloney & Noyes, P.C. from sending a communication to any

state in which it is not licensed to practice law.  She demands an "immediate evidentiary hearing to determine if these attorneys in concert with Wal-Mart are violating Texas Disciplinary Rules in addition to State Penal Code and should warrant immediate referral to the State Bar and/or Attorney General of Texas for prosecution." (*Id.*).

Wal-Mart and Costin removed on July 24, 2008 on the basis of diversity jurisdiction, asserting that Costin, the only nondiverse defendant, was improperly joined.  This remand motion followed.

## II.     The Motion for Remand

Gipson argues that this suit should be remanded because there is an insufficient showing that the jurisdictional amount is satisfied and because she has properly stated a basis for recovering against Costin under Texas law.  Gipson asserts that the notice of removal is misleading because it did not expressly identify the allegations in the state court petition that Costin committed intentional torts for which she may be individually liable even if those torts were committed in the scope of her employment for Wal-Mart.  In response, Wal-Mart and Costin contend that the jurisdictional amount requirement is clearly met and the allegations about Costin in the state court petition do not state a reasonable basis for recovering against her.

A defendant has the right to remove a case to federal court when federal jurisdiction exists and the removal procedure is properly followed.  28 U.S.C. § 1441.  The removing party bears the burden of establishing that a state court suit is properly removable to federal court.  *See Delgado v. Shell Oil Co.*, 231 F.3d 165, 178 n. 25 (5th Cir. 2000); *Frank v. Bear*

6

*Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997); *see also Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) ("[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court."*).*  Doubts about the propriety of removal are to be resolved in favor of remand.  *Manguno v. Prudential Prop. & Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941).

### A.    The Amount in Controversy Requirement

#### *1.    The Legal Standard*

When a plaintiff does not allege a specific amount of damages, to invoke diversity jurisdiction on removal the defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.  *See Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 1998).  A defendant may carry its burden by showing that it is facially apparent from the petition that plaintiff's claims are likely to exceed $75,000 or by presenting summary-judgment-type evidence that the amount in controversy is likely to exceed $75,000. *Id.*  These "tests are applied in order, and only if the 'facially apparent' test is not met," a court will require "'summary judgment' type evidence of the amount in controversy." *Pollet v. Sears Roebuck & Co.*, 46 Fed. Appx. 226, 2002 WL 1939917, at *2-3 (5th Cir. 2002).  If a defendant satisfies one of these two tests, plaintiff can only defeat removal if he proves that "to a legal certainty," his claims will not exceed $75,000.  *DeAguilar*, 47 F.3d at 1412.

#### *2.    Analysis*

The notice of removal asserts that the amount in controversy exceeds the jurisdictional

amount. Gipson seeks lost wages, lost future opportunity, mental anguish damages, compensatory damages, and punitive damages. Given the nature of Gipson's alleged injuries and the damages she seeks, it is facially apparent from her petition that the amount in controversy exceeds $75,000. *See White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003) (facially apparent that amount in controversy requirement met when plaintiff sought "punitive damages, attorney's fees, pre-judgment interest, court costs, and compensatory damages for lost pay, lost fringe benefits, front pay, loss of wage earning capacity, harm to [plaintiff's] credit and credit reputation, and mental anguish and emotional distress); *Martin v. Sw. PCS, L.P.*, 2003 WL 22477692, at *3 (W.D.Tex.) (plaintiff's request of damages for past and future lost wages, nonpecuniary damages for severe emotional distress, injury to reputation, and punitive damages facially demonstrated a claim in excess of $75,000**).**

## B.     Improper Joinder

### 1.     *The Legal Standard*

If federal jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332, an action is "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which [the] action is brought." 28 U.S.C. § 1441(b). A case may be removed despite the presence of a resident defendant in the state court suit, if the removing defendant shows that the resident defendant was fraudulently or improperly joined.[2]

---

[2] "Fraudulent joinder" does not require a showing that the plaintiff had an intent to deceive or knew that the facts alleged were false. *See, e.g.*, *Poulos v. Naas Foods, Inc.*, 959

The burden of persuasion on those who claim fraudulent joinder is a heavy one.  *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549, (5th Cir. 1981).  To establish that a nondiverse defendant has been improperly joined for the purpose of defeating diversity jurisdiction, the remaining party must prove either that there has been actual fraud in the pleading of jurisdictional facts or that there is no reasonable possibility that the plaintiff will be able to establish a cause of action against that party in state court.  *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 992, 125 S.Ct. 1825, 161 L.Ed.2d 755 (2005).  The second approach focuses on whether plaintiff has asserted a valid state-law cause of action against the nondiverse defendant.  *Id.*  The test is whether "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  *Id.*  In determining whether there is a reasonable basis for the plaintiff to recover against a defendant under state law, a court conducts "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."[3]  *Id.*  "If

_____

F.2d 69, 73 (7th Cir.1992).

[3]Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted."  FED. R. CIV. P. 12(b)(6).  The Supreme Court recently clarified the standards that apply in a motion to dismiss for failure to state a claim.  In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), the Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 127 S. Ct. at 1974. Although material allegations in the complaint must be accepted as true and construed in the

the plaintiff can survive a Rule 12(b)(6) challenge, there [generally] is no improper joinder."
*Id.* There are cases in which a summary inquiry is appropriate to "identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74; *see, e.g., Guillory v. PPG Industries, Inc.,* 434 F.3d 303, 311 (5th Cir. 2005) (upholding   district court's piercing of the pleadings when the parties had conducted ten months of post-removal discovery).  Limited discovery may be appropriately used in determining improper joinder, particularly when the discovery forms the basis for the removal.  *Guillory*, 434 F.3d at 311 (*Smallwood* "sharply limits, but does not eliminate, discovery."); *Smallwood,* 385 F.3d at 574.  But, as the court cautioned in  *Smallwood,* "[a]ttempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined."  In the present case, the pleadings provide the basis for determining the propriety of removal.  If the record reveals a reasonable basis of recovery on one cause of action, the court must remand the entire suit to state court.  *Rubin v. Daimlerchrysler Corp.*, No. Civ. A. H044021, 2005 WL 1214605, at *2 (S.D.Tex. May 20, 2005).

   2. *Analysis*

---

light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.

The motion to remand requires this court to determine whether Gipson has a reasonable basis for recovering on her claims against Costin under Texas law. Each of the claims asserted in the petition must be examined.

• Negligence.

Gipson asserted negligence claims against all the defendants, including Costin. The defendants contend that these claims fail because Gipson has not alleged that Costin owed her any independent duty of reasonable care, apart from that which Wal-Mart owed any store patron. In Texas, an employee may not be held individually liable for breach of a legal duty unless she breaches an independent duty of care she owed to the injured party separate from her employer's duty. *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996).

As a Wal-Mart employee, Costin did not owe a customer, Gipson, a duty of reasonable care independent from the duty Wal-Mart owed. Gipson's state court petition refutes any argument that Costin owed Gipson an independent duty of care because the actions Costin allegedly took were in the course and scope of her employment. The petition also alleges that "Wal-Mart Stores, Inc. is responsible for damages as well as punitive damages because the acts of its agents were the acts of Wal-Mart under the vice-principal doctrine." (Docket Entry No. 1, Ex. A). Gipson cannot establish a cause of action for negligence or gross negligence against Costin. *See McKinney v. Home Depot, USA, Inc.*, No. 4:06-cv-327-A, 2006 WL 2947324, at *2 (N.D.Tex. Oct. 13, 2006) (concluding that a store manager was improperly joined because the plaintiff failed to allege that he owed an independent duty to the plaintiff); *Allen v. Home Depot U.S.A., Inc.*, No. SA-04-0CA703XR,

11

2004 WL 2270001, at *3 (W.D.Tex. Oct. 6, 2004) (noting that despite the plaintiff's assertion that she alleged an independent cause of action against the store manager, the plaintiff also alleged that the store manager was acting in the course and scope of his employment, and thus there was no possibility of recovery); *Palmer v. Wal-Mart Stores, Inc.*, 65 F.Supp.2d 564, 567 (S.D.Tex.1999) (denying plaintiff's motion to remand, and noting that the plaintiff made no allegations that the store manager owed "her any independent duty or duty of reasonable care, apart from that which his employer owed any store patron").

•      *Intentional Torts*

In her motion to remand, Gipson contends that the notice of removal ignores the intentional tort allegations and argues that she is "seeking to hold both Wal-Mart and Costin liable for false arrest, false imprisonment, malicious prosecution, defamation, [intentional infliction of emotional distress], DTPA, Fraud, conversion."  (Docket Entry No. 9, at 2) (emphasis in original).   An employee who commits an intentional tort may be held individually liable for her actions.  *See Capital Pac., L.L.C. v. Humble Garden, L.L.C.*, No. 01-05-00469-CV, 2005 WL 2989576 (Tex. App.–Houston [1st Dist.] Nov. 3, 2005, no pet.). This court considers each of the intentional tort claims below to determine whether Gipson has stated a claim to establish Costin's liability under Texas law.

•      *Fraud*

The allegations of the state court petition belie Gipson's contention in the remand motion that she seeks to hold Costin liable for fraud, conversion, and a violation of the DTPA.  The petition does not contain allegations of conduct by Costin that would support

12

a claim under any of these theories.

A facially valid cause of action for fraud under Texas common law has the following elements: (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the representation, he knew it was false or made the representation recklessly without any knowledge of the truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon the representation; (5) the plaintiff actually relied upon the representation; and (6) the plaintiff suffered injury as a result. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex.1992). Gipson's petition does not state a fraud claim against Costin. The only fraud allegation in the petition pertains to Wal-Mart. The petition states that "Wal-Mart committed fraud upon Ms. Gipson and the public when it lied about its service of issuing negotiable money orders." (Docket Entry No. 1, Ex. A at 6). There is no allegation that Costin made any representation to Gipson on which to base a fraud claim. With respect to her fraud claim, Gipson's joinder of Costin is improper and cannot bar federal jurisdiction. *See Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Health, Inc.*, 2007 WL 173046, at *2 (S.D. Tex. Jan. 18, 2007) (denying remand when "[n]either the complaint nor anything in the record identifie[d] a representation by [defendant] that supports Plaintiff's claims").

•     *Conversion*

To prevail on a conversion claim, a plaintiff must prove that: (1) she owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of,

13

or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Grand Champion Film Production, L.L.C. v. Cinemark USA, Inc*., 257 S.W.3d 478, 485 (Tex. App. – Dallas 2008). Gipson's state court petition does not contain any allegation that Costin wrongfully exercised dominion over Gipson's property. With respect to her conversion claim, Gipson's joinder of Costin is improper and cannot act as a bar to federal jurisdiction. *See City of Dallas v. King*, No. 05-96-01457-CV, 1998 WL 337863, at *2 (Tex. App. – Dallas 1998, pet. denied) (conversion claim failed as a matter of law when there was no basis to conclude that defendant exercised wrongful dominion or control over property).

- *DTPA*

The elements of a DTPA claim are: (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). Employees can be held individually liable for their own acts that violate the DTPA. *See Weitzel v. Barnes*, 691 S.W.2d 598, 601 (Tex.1985) (finding corporate officers liable under DTPA in their individual capacities for their own misrepresentations even though they acted on behalf of corporation). Gipson's petition alleges that "Wal-Mart engaged in deceptive trade practices in representing that goods and services were not as represented–negotiable as cash." (Docket Entry No. 1, Ex. A at 6). The petition does not allege any conduct by Costin that would violate the DTPA. With respect to her DTPA claim, Gipson's joinder of Costin is improper and does not bar federal removal

14

jurisdiction. *See Light v. Wilson*, 663 S.W.2d 813 (Tex. 1983) (declining to hold agent liable because no evidence that agent individually violated the DTPA).

• *False Arrest/False Imprisonment*

The elements of false imprisonment are (1) a willful detention, (2) without consent, and (3) without authority of law. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). Liability for false imprisonment extends beyond those who willfully participate in detaining the plaintiff to include those who instigate the detention. *Id.* at 507. When the alleged detention results from an unlawful arrest, a plaintiff seeking to prove instigation must show that the defendant clearly directed or requested the arrest. *Id.* The arrest must be made by the officer, not of his or her own volition, but to carry out the defendant's request. *Id.*

Although a private citizen may be liable for instigating or directing an arrest that results in a false imprisonment, instigation or direction cannot be inferred simply from a report of crime made to the authorities. *Id.* at 509-10. Such an inference is justified only when a party provides information in its report that it knows is false. Merely providing inaccurate or incomplete information will not make a party liable for instigating a subsequent imprisonment. *Id.*

Assuming the truth of the facts alleged in Gipson's petition, they do not state a plausible claim for false imprisonment against Costin. There are no allegations that Costin instigated or directed Gipson's arrest. Gipson does not allege that Costin knew that the information she and others provided to the HPD about the money orders was false. To the contrary, Gipson faults all the defendants for not obtaining information that would have

15

revealed that the money orders were not fraudulent or counterfeit.  Gipson only alleges that Costin told her that Wal-Mart employees had called Wal-Mart bank and verified that the money orders were not genuine.  This does not amount to an allegation that Costin knew the money orders were genuine but nevertheless directed or requested the HPD officers to arrest Gipson.  Gipson's false arrest and false imprisonment claims against Costin do not provide a reasonable basis for recovery against her.

• *Malicious Prosecution*

A claim for malicious prosecution requires: (1) the commencement of a criminal prosecution; (2) causation, initiation, or procurement, of the action by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff.  *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997).  A person initiates a criminal prosecution if he makes a formal charge to law enforcement authorities.  *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 292 (Tex. 1994). A person procures a criminal prosecution if his actions are enough to cause the prosecution, and but for his actions the prosecution would not have occurred.  *Id.*

For a defendant to procure a criminal proceeding, his desire to have the proceedings initiated – expressed by his direction, request, or pressure of any kind – must appear to be the determining factor in the official's decision to commence the prosecution.  *Rodriguez*, 92 S.W.3d at 509.  Procuring criminal proceedings requires a direction or request for that action.  *Id.*  Merely reporting a crime and the suspected criminal to law enforcement

16

authorities is not procurement of criminal proceedings when the authorities exercise discretion in deciding whether to prosecute. *Id.*  A person reporting criminal conduct to law enforcement may be considered to have procured criminal proceedings if that person provides information that he knows is false.  *Id.*

Gipson's petition alleges that "Ms. Costin signed a complaint charging Ms. Gipson with a felony–forgery."  (Docket Entry No. 1, Ex. A at 5).  The petition alleges that Gipson was released, the forgery charge was abandoned and was without probable cause, and that she lost her job as a result of the charge and arrest.  Gipson's petition is devoid of any allegations of malice on Costin's part.  Malice is defined as "ill will or evil motive, or such gross indifference for the rights of others as to amount to a knowing, unreasonable, wanton, and willful act."  *Luce v. Interstate Adjusters, Inc.*, 26 S.W.3d 561, 566 (Tex. App.– Dallas 2000, no pet.).  There is no allegation that Costin knew that any information provided to the HPD was false.  Gipson's only allegations specifically mentioning Costin are that the money orders were "fake" and "counterfeit" and that Costin signed a criminal complaint for forgery against Gipson.  These alleged actions do not allege any basis for finding a "gross indifference for the rights of [Gipson] as to amount to a knowing, unreasonable, wanton, and willful act."  On its face, the petition precludes a reasonable basis for finding Costin liable for malicious prosecution.  With respect to her malicious prosecution claim, Gipson's joinder of Costin is improper and cannot bar federal jurisdiction.

- *Intentional Infliction of Emotional Distress*

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must

17

show that: (1) a defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused her emotional distress; and (4) the emotional distress was severe. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004); *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003).  A defendant's conduct satisfies the second element only if it is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting Restatement (Second) Of Torts § 46 cmt. d (1965)).  Conduct that is merely insensitive or rude is not extreme and outrageous, nor are "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999).

The Texas Supreme Court has recognized that knowingly providing false information to police so that an innocent person is prosecuted could qualify as extreme and outrageous conduct.  *See Kroger Texas Ltd. Partnership v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). There is no allegation that Costin provided information to the police, much less information she knew to be false.  The only allegation in Gipson's petition relevant to this claim is that "Defendants also intentionally inflicted emotional distress upon Ms. Gipson." (Docket Entry No. 1, Ex. A at 5).  This conclusory allegation is insufficient to state a claim against Costin for intentional infliction of emotional distress.  Gipson's joinder of Costin is  improper and cannot bar federal jurisdiction.

- *Defamation*

18

The elements of defamation are that: (1) the defendant published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with malice, if the plaintiff was a public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). A defamatory statement is one in which the words tend to damage a person's reputation, exposing him or her to public hatred, contempt, ridicule, or financial injury. *Einhorn v. LaChance*, 823 S.W.2d 405, 410-11 (Tex.App.–Houston [1st Dist.] 1992, writ dism'd w.o.j.). Defamation claims must specifically state the time and place of publication of such statements. *See Ameen v. Merck & Co., Inc.*, 226 Fed. Appx. 363, 2007 WL 1026412, at *5 (5th Cir. 2007).

Gipson's petitition alleges that Costin stated that the money orders were "fake" and "counterfeit." While the petition gives the time, place, and speaker of the allegedly defamatory statements, it does not provide a reasonable basis for predicting recovery against Costin on her defamation claim. Gipson has not alleged that Costin made any statements to a third-party or otherwise published the statements forming the basis of her claim. Gipson has not alleged the identity of the listener of the defamatory statements. Gipson has not alleged any basis for finding malice, and as a matter of law Costin cannot be individually liable for negligence. The petition does not provide any basis for finding a reasonable basis for Gipson recover on her defamation claim against Costin. *See Lowery v. Allstate County Mut. Ins. Co.*, 2007 WL 1231703, at *3-5 (N.D. Tex. Apr.23, 2007) (finding improper joinder because plaintiff's petition failed to state a claim of defamation against in-state

19

defendant where complaint did not state that allegedly defamatory statements were made to third party); *Garrett v. Celanese Corp.*, 2003 WL 22234917, at *4-5 (N.D. Tex. Aug.28, 2003) (dismissing defamation claim for failure to state a cause of action where complaint did not identify any specific defamatory statements, the time or place of such statements, and the third party to whom these statements were made); *Jackson v. Dallas Indep. Sch. Dist.*, 1998 WL 386158, at *5 (N.D. Tex. 1998) (finding state claim for defamation deficient, noting that courts require more particular pleading to allow the opposing party to raise the appropriate defenses). With respect to her defamation claim, Gipson's joinder of Costin is improper and cannot bar federal jurisdiction.

Gipson asserts that the defendants improperly removed this case on the basis that her intentional tort claims against Costin are only supported by conclusory allegations. She contends that "[i]n Texas, parties may make conclusory allegations-which in the absence of special exceptions-are sufficient." (Docket Entry No. 15, at 4). Gipson asserts that "Defendant should have moved for special exceptions is state court rather than burden the Federal Court with a frivolous removal." (*Id.* at 3). She claims that "even under 12(b)(6), Plaintiff would be permitted to amend any pleading deficiency prior to dismissal." (*Id.*).

Gipson is correct that under the Texas Rules of Civil Procedure, the "proper way for a defendant to urge that a plaintiff has failed to plead a cause of action is by special exception." *See Rodriguez v. U.S. Sec. Assocs.*, 162 S.W.3d 868, 874 (Tex. App.– Houston [14th Dist.] 2005, no pet.). "[W]hen special exceptions are sustained, the pleader must be given, *as a matter of right*, an opportunity to re-plead." *Id.* (emphasis added). "Only after

20

special exceptions have been sustained and a party has been given an opportunity to amend

its pleadings may a case be dismissed for failure to state a cause of action." *Id.*; *see also*

*Bagg v. University of Texas Medical Branch*, 726 S.W.2d 582, 587 (Tex.App.-Houston [14th

Dist.] 1987, writ ref'd n.r.e.).  These Texas pleading rules do not apply to the remand analysis

in federal court.  When determining whether to remand, courts consider the claims as they

existed at the time of removal and generally do not look to postremoval amendments.  *See*

*Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir.1995); *Manguno*, 276

F.3d at 723; *Evans v. Courtesy Chevrolet II, LP*, 423 F.Supp.2d 669, 670 (S.D. Tex. 2006).

Gipson's argument that she should be permitted to amend her  petition to state viable claims

against Costin lacks merit.

### C.    Conclusion as to Motion to Remand

Because the record reveals that Gipson has no reasonable basis for recovering on her

claims against Costin, she is improperly joined.  Her Texas citizenship is properly ignored

in determining federal removal jurisdiction based on diversity.  The motion to remand is

denied.

## III.   The Motions for Sanctions and Attorney's Fees

Gipson has moved for sanctions against Wal-Mart's counsel, arguing that he made

intentionally false statements to support removal by stating that Gipson's claims against

Costin were in negligence and not referring to the intentional tort claims.  Gipson asserts that

the removal was frivolous and not warranted under existing law.  The defendants' response

states that "[w]hile the grounds for removal . . . could have been more clear and concise,

counsel vehemently denies making any intentionally false or misleading representations to the Court therein." (Docket Entry No. 13). Wal-Mart and Costin contend that sanctions are inappropriate because Gipson's petition was ambiguous as to which claims were asserted against which defendants.

A district court has broad discretion in determining whether a sanction is warranted and what sanction is appropriate. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 404 (1990). The test for imposing Rule 11 sanctions is whether the attorney's conduct was objectively reasonable under the circumstances. *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 873 (5th Cir. 1988). Rule 11 sanctions are a coercive mechanism available to trial court judges to enforce ethical standards on attorneys appearing before them. Sanctions are to be imposed with "restraint and discretion." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999). Rule 11(c)(2) requires that a party seeking sanctions must serve the Rule 11 motion on the opposing party and may not file the motion with the district court unless the offending filing is not withdrawn or corrected within 21 days after service. FED. R. CIV. P. 11(c)(2). A motion for sanctions must be made separately from any other motion. *Id.* The record does not show that Gipson complied with the procedural requirements for seeking sanctions under Rule 11. Moreover, sanctions against Wal-Mart's counsel are not warranted because removal was proper.

Gipson also seeks an award of attorney's fees and costs under 28 U.S.C. § 1447(c). That section authorizes the court to "require payment of just costs and any actual expenses, including attorney fees incurred as a result of removal." The Supreme Court has clarified

that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). Wal-Mart and Costin had an objectively reasonable basis for seeking removal, and removal was proper.  The motion for fees is denied.  *See Miranti v. Lee*, 3 F.3d 925, 929 (5th Cir. 1993) (holding that attorney's fees and costs "should be awarded only if it was improper for the defendant to remove").

## IV.  Conclusion

While the burden to prove fraudulent or improper joinder is a heavy one, Wal-Mart and Costin have met it in this case.  Because diversity jurisdiction provides a basis for removal, this court denies Gipson's motion to remand.  The motions for sanctions and attorney's fees are denied.

SIGNED on November 3, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

23